# 14-1281-cv

IN THE

## United States Court of Appeals

### FOR THE SECOND CIRCUIT

⸺ ◆◆ ⸺

HANCY P. JOSEPH,

*Plaintiff-Appellant,*

—against—

OWENS AND MINOR DISTRIBUTION, INC.,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANT-APPELLEE

IRA G. ROSENSTEIN
ASHLEY J. HALE
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, New York 10178
(212) 309-6000

*Attorneys for Defendant-Appellee*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendant-Appellee Owens & Minor Distribution, Inc. discloses that it is a wholly-owned subsidiary of Owens & Minor, Inc., which is a publicly held corporation.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ........................................................i

COUNTERSTATEMENT OF THE ISSUES........................................................1

STATEMENT OF THE CASE.............................................................................2

STATEMENT OF FACTS ..................................................................................3

STANDARD OF REVIEW .................................................................................9

SUMMARY OF ARGUMENT ..........................................................................10

ARGUMENT ....................................................................................................13

    SUMMARY JUDGMENT WAS PROPERLY GRANTED TO
    DEFENDANT WHERE PLAINTIFF CANNOT SHOW THAT HE
    WAS TERMINATED UNDER CIRCUMSTANCES GIVING RISE
    TO AN INFERENCE OF DISCRIMINATION ..........................................13

        A.    Mr. Davis Had No Influence Over the
               "Nondiscriminating Decisionmakers" ....................................14

        B.    Plaintiff Cannot Show That O&M's Reason for
               Terminating Him Is Pretextual................................................21

CONCLUSION .................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abramson v. William Paterson College of New Jersey*,
260 F.3d 265 (3d Cir. 2001) .............................................................................18

*Adeniji v. Admin. for Children Servs., NYC*,
43 F. Supp. 2d 407 (S.D.N.Y. 1999) ...............................................................20

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986).............................................................................................9

*Brower v. Continental Airlines, Inc.*,
62 F. Supp. 2d 896 (E.D.N.Y. 1999) ...............................................................16

*Cellular Telephone Co. v. Town of Oyster Bay*,
166 F.3d 490 (2d Cir. 1999) ...............................................................................9

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)...........................................................................................10

*Cerwinski v. Ins. Servs. Office, Inc.*,
No. 96-cv-9368, 1997 WL 234672 (2d Cir. May 8, 1997) .............................22

*Cronin v. Aetna Life Ins. Co.*,
46 F.3d 196 (1995).............................................................................................13

*D'Amico v. City of New York*,
132 F.3d 145 (2d Cir. 1998) ...............................................................................9

*Del Franco v. N.Y. City Off-Track Betting Corp.*,
429 F. Supp. 2d 529 (E.D.N.Y. 2006) .............................................................15

*Donahue v. Windsor Locks Bd. of Fire Comm'rs*,
834 F.2d 54 (2d Cir. 1987) .................................................................................9

*Ercegovich v. Goodyear Tire & Rubber Co.*,
154 F.3d 344 (6th Cir. 1998) ............................................................................18

*Goenaga v. March of Dimes Birth Defects Foundation*,
51 F.3d 14 (2d Cir. 1995) .................................................................................21

*Griffin v. Washington Convention Ctr.*,
　　142 F.3d 1308 (D.C. Cir. 1998) ................................................................18

*Holt v. KMI-Continental, Inc.*,
　　95 F.3d 123 (2d. Cir. 1996) ....................................................................16

*Hunt v. Tektronix, Inc.*,
　　952 F. Supp. 998 (W.D.N.Y. 1997) ........................................................19

*Iverson v. Verizon Comms.*,
　　No. 08-cv-8873, 2009 WL 3334796 (S.D.N.Y. Oct. 13, 2009) ................23

*Kulak v. City of New York*,
　　88 F.3d 63 (2d Cir. 1996) ......................................................................15

*Lawless v. TWC Media Solutions, Inc.*,
　　No. 11 Civ. 2076, 2012 WL 2579897 (2d Cir. July 5, 2012) ..................16

*Lederman v. N.Y. City Dep't of Parks & Rec.*,
　　731 F.3d 199 (2d Cir. 2013) ..................................................................12

*Maarouf v. Walker Mfg. Co.*,
　　210 F.3d 750 (7th Cir. 2000) ................................................................19

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
　　475 U.S. 574 (1986) ...........................................................................9, 10

*McDonald v. Maimonides Med. Ctr.*,
　　No. 99 Civ. 6849, 2002 WL 257818 (E.D.N.Y. Jan. 3, 2002) ................21

*Meiri v. Dacon*,
　　759 F.2d 989 (2d Cir. 1985) ..................................................................14

*Octobre v. Radio Shack Corp.*,
　　No. 07-cv-3311, 2010 WL 850189 (S.D.N.Y. Mar. 11, 2010) ................23

*Patterson v. Cnty. of Oneida, N.Y.*,
　　375 F.3d 206 (2d. Cir. 2004) ................................................................20

*R.B. Ventures, Ltd. v. Shane*,
　　112 F.3d 54 (2d Cir. 1997) ......................................................................9

*Risco v. McHugh*,
    868 F. Supp. 2d 75 (S.D.N.Y. 2012) ...............................................................20

*Robinson v. Zurich N.A. Ins. Co.*,
    892 F. Supp. 2d 409 (E.D.N.Y. 2012) .............................................................15

*Rose v. NYC Board of Educ.*,
    257 F.3d 156 (2d Cir. 2001) ...............................................................17, 18

*Rosenberg v. Chesapeake Pharm. & Health Care Packaging*,
    888 F. Supp. 2d 302 (E.D.N.Y. 2012) .............................................................22

*Russell v. McKinney Hospital Venture*,
    235 F.3d 219 (5th Cir. 2000) ...............................................................18

*Santiago-Ramos v. Centennial P.R. Wireless Corp.*,
    217 F.3d 46 (1st Cir. 2000) ...............................................................18

*St. Mary's Honor Ctr. v. Hicks*,
    509 U.S. 502 (1993) ...............................................................21

*Stacks v. Southwestern Bell Yellow Pages, Inc.*,
    27 F.3d 1316 (8th Cir. 1994) ...............................................................19

*State St. Bank & Trust Co. v. Inversions Errazuriz Limitada*,
    374 F.3d 158 (2d Cir. 2004) ...............................................................12

*Tex. Dep't of Cmty. Affairs v. Burdine*,
    450 U.S. 248 (1981)...............................................................13

*Tolbert v. Queens College*,
    242 F.3d 58 (2d Cir. 2001) ...............................................................12

*U.S. v. Diebold, Inc.*,
    369 U.S. 654 (1962) (per curiam)...............................................................9

*Viola v. Philips Med. Sys. of N. Am.*,
    42 F.3d 712 (2d Cir. 1994) ...............................................................23

*W. World Ins. Co. v. Stack Oil, Inc.*,
    922 F.2d 118 (2d Cir. 1990) ...............................................................10

*Weber v. Parfums Givenchy, Inc.,*
   49 F. Supp. 2d 343 (S.D.N.Y. 1999) ................................................................19

**STATUTES**

42 U.S.C. §2000e *et seq.* (2009) ...................................................................passim

N.Y. City Admin. Code §8-101 *et seq.*..........................................................2, 3, 12

N.Y. Exec. Law §290 *et seq.* ..........................................................................2, 12

**OTHER AUTHORITIES**

FED. R. APP. P. 32(a)(5) ....................................................................................25

FED. R. APP. P. 32(a)(6) ....................................................................................25

FED R. APP. P. 32(a)(7)(B) ...............................................................................25

FED R. APP. P. 32(a)(7)(B)(iii)...........................................................................25

## <u>COUNTERSTATEMENT OF THE ISSUES</u>

Whether the district court properly granted Defendant-Appellee's Motion for Summary Judgment and dismissed Plaintiff's race discrimination claims brought under Title VII of the Civil Rights Act of 1964 as amended where Plaintiff-Appellant did not show that his termination occurred under circumstances giving rise to an inference of discriminatory intent, where Defendant articulated a legitimate, nondiscriminatory reason for its decision to terminate Plaintiff, and where Plaintiff failed to show the articulated reason was pretextual.

**STATEMENT OF THE CASE**

In October 2011, Plaintiff-Appellant Hancy P. Joseph ("Joseph" or "Plaintiff") filed the action below against his former employer, Owens and Minor Distribution, Inc. ("O&M," "Defendant," or "Defendant-Appellee"). In his Complaint, Plaintiff asserted nine causes of action alleging various claims of discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.* (2009) ("Title VII"), the New York State Human Rights Law, N.Y. Exec. Law §290 *et seq.* ("NYSHRL") and the New York City Human Rights Law, N.Y. City Admin. Code §8-101 *et seq.* ("NYCHRL").

In July 2013, Defendant filed a Motion for Summary Judgment as to all of Plaintiff's claims. By Order dated March 24, 2014, the District Court, Hon. Margo K. Brodie, granted the Defendant's motion and dismissed the Complaint in its entirety. In so holding, the District Court found that: (1) Plaintiff failed to state a *prima facie* case of racial or national origin discrimination pursuant to Title VII or the NYSHRL; (2) even if Plaintiff had pled a *prima facie* case, Defendant proffered a nondiscriminatory reason for its adverse action and Plaintiff failed to show that this reason was pretextual; (3) Plaintiff's Title VII and NYSHRL retaliation claims failed where he failed to show that but-for his complaints he would not have been terminated; (4) even under the more liberal NYCHRL standard, Plaintiff failed to show that discrimination played any role in his

2

termination; and that (5) even under the more liberal NYCHRL standard, Plaintiff could not show that the reason for his termination was pretextual. This appeal of the granting of summary judgment of Plaintiff's Title VII race claim followed.

## STATEMENT OF FACTS

Plaintiff was hired by O&M as a Project Analyst in February 2008, and promoted to the role of Senior Analyst in November 2009. (A-276). O&M is a leading national distributor of medical and surgical supplies and a leading producer of healthcare supply chain management solutions. (A-100). One of the products O&M offers is an inventory control system known as Clinical Supply Solutions ("CSS"), the focal point of which is inventory management software called QSIGHT. (A-171).

In August, 2010, Plaintiff was working on-site at New York Methodist Hospital ("NYM") as part of O&M's CSS initiative. (A-23 – A-25; A-28 – A-30; A-276). NYM was an important customer for O&M and was considering purchase of the QSIGHT Program. (A-110; A-171; A-192). In his new role at NYM, Plaintiff was expected to provide logistical support and directly interact with the Interventional Program Coordinator for NYM's Cardiology Unit, Aleksey Manashir. (A-110; A-172; A-278).

On August 30, 2010, Plaintiff joined an informal meeting between Mr. Manashir and the O&M Project Manager, Mark Davis, who was responsible for

3

the national CSS Team. (A-43 – A-45; A-48 – A-59). During the August 30th meeting, Plaintiff was argumentative, confrontational, and an impediment to resolving the issues being discussed. (A-111; A-193). Mr. Davis eventually grew so uncomfortable with Plaintiff's behavior in front of a customer that he asked Plaintiff to leave so that they could speak outside. (A-111; A-193). After Plaintiff initially refused to leave the meeting, Mr. Davis stood up and touched Plaintiff lightly on the upper arm or back, saying "you need to go so we can finish." (A-193; A-198). Mr. Davis then left the room and Plaintiff had no further contact that day with Mr. Davis. (A-193)[1].

Immediately after the August 30 incident, Plaintiff called his supervisor, David White. (A-172). He said he had been "pushed out" of a meeting with a customer and was humiliated. (A-172). Later that day, Plaintiff sent an email to Mr. White once again recounting the incident in Mr. Manashir's office. Plaintiff's August 30th email to Mr. White does not raise the issue of race or national origin discrimination. (A-173; A-179). Plaintiff also sent an email regarding the incident to a number of other individuals, including Mr. White's director supervisor,

---

[1] Plaintiff's description of the meeting with Mr. Davis is consistent with Mr. Davis'. He testified at his deposition that he argued with Mr. Manashir and Mr. Davis and that Mr. Davis eventually asked him to leave the meeting and put his hand on his shoulder. (A-48 – A-59).

William "Vern" Britton.  (A-99).  Again, Plaintiff's email to Mr. Britton and others does not mention or refer to race or national origin discrimination.  *Id*.

The next day, September 1, 2010, Mr. White flew from Richmond to New York where he met separately with Plaintiff, Mr. Davis, and Mr. Manashir.  (A-80; A-173).  During his meeting with Mr. White, Plaintiff stated that Mr. Davis humiliated him in front of Mr. Manashir by asking him to leave the meeting.  (A-173).  Mr. White testified that Plaintiff did not ever raise complaints that Mr. Davis had been motivated to ask him to leave the meeting because Plaintiff is black or Haitian.  The contemporaneous written record supports his recollection.  (A-115; A-173; A-179; A-195).  After that meeting, Plaintiff expressed his desire to move forward and continue working with the CSS team at NYM.  (A-173; *Id*.).

Mr. Davis and Mr. Manashir both reported to Mr. White that Plaintiff's conduct had been disruptive.  (A-111; A-173; A-194).  Mr. Manashir confirmed that Mr. Davis' communications with Plaintiff had been respectful and that he had not seen any pushing or inappropriate physical contact between them.  (A-111; A-173).  Despite Mr. White's efforts, on September 2, 2010, Plaintiff sent an email to William Angus, the Director of Human Resources Services and Staffing at O&M, in which he again forwarded his August 30, 2010 email explaining that he had reported the incident to "all key leaders of the region" and falsely stated that he had

not yet heard anything in response. (A-99). In his September 2nd email, Plaintiff again does not mention discrimination against him based on protected status. *Id*.

As a result of Plaintiff's September 2nd email to Mr. Angus, Helen Hamilton, a corporate HR Generalist at O&M, interviewed Plaintiff regarding the incident with Mr. Davis on September 8, 2010. (A-114). During their September 8th meeting, Plaintiff told Ms. Hamilton that he did not know why the incident had happened, but that he believed it could have been a result of stress from the weekend before. (A-115). Plaintiff has admitted that he did not tell Ms. Hamilton that he believed Mr. Davis' conduct was motivated by his race or national origin. (A-70 – A-73; A-115). Based on the investigation, O&M ultimately concluded that the situation on August 30th had been an interpersonal disagreement and that neither Mr. Davis nor Plaintiff required any disciplinary action. (A-116; A-160 – A-161; A-173).

Ms. Hamilton and O&M were naturally concerned about Plaintiff's self-reported conduct during the August 30th meeting and the descriptions that had been provided by Mr. Davis and Mr. Manashir, particularly considering his prior behavioral issues. (A-116; A-172). Prior to 2010, for example, he was removed from assignments at Lawrence Hospital after interpersonal issues arose and also removed from an assignment at Staten Island Hospital at the client's request. (A-19 – A-22; A-172; A-276). In light of this concern, Mr. White collaborated with

6

Ms. Hamilton to develop a training plan for Plaintiff through "Owens & Minor University," the Company's in-house training department. (A-116; A-174).

Before the training plan could be implemented, however, Plaintiff was again involved in another confrontation with Mr. Manashir at NYM on September 22, 2010. That afternoon Mr. Manashir called Mr. White and put him on speaker phone, while Plaintiff was in the room. Mr. White listened to Plaintiff and Mr. Manashir argue about the implementation of the CSS program, the type of service the customer was receiving, and the exact requirements of Plaintiff's position and then Mr. Manashir abruptly hung up. (A-81 – A-90; A-95 – A-96; A-111; A-174). Later that day, Mr. Manashir left Mr. White a voicemail saying that things were not working out between him and Mr. Joseph and that he was very disappointed with the support provided to him by Plaintiff. (A-111; A-174; A-181).

Naturally, the relationship with NYM was extremely important to O&M. In a customer-focused business, this kind of antagonism between a company's employee and its customer was highly inappropriate. (A-174). Accordingly, O&M removed Plaintiff from the NYM account. Given Plaintiff's persistent performance deficiencies, O&M was reluctant to move Plaintiff into another customer-facing role and accordingly could not find another suitable position in which to place Plaintiff. (A-117; A-176). Mr. White communicated again with Plaintiff on September 29, 2010 to express his concern about Plaintiff's behavior

with Mr. Manashir and to make clear to Plaintiff that any subsequent employment action would solely be the result of Mr. Manashir's complaints, and not, as Plaintiff seemed to suggested, a result of the prior, resolved issue with Mr. Davis. (A-176; A-189).

In light of the fact that there was no other position available for him, as well as his observed, recurrent inappropriate behavior, Mr. White and Ms. Hamilton recommended termination of Plaintiff's employment with O&M on or around October 5, 2010. (A-117; A-176; A-283). The decision to terminate Plaintiff's employment was made against the backdrop of a continued pattern of well-documented performance issues and had nothing to do with his race or national origin. In order to assist him in transitioning from his job, Plaintiff was offered a severance package in return for executing a release. (A-38 – A-42; A-117).

On or about October 6, 2010, Ms. Hamilton called Plaintiff to ensure that he understood the terms of the severance package O&M had offered him. (A-117). It was during this phone call following his separation from employment with the Company that Plaintiff suggested to Ms. Hamilton, for the very first time, that he believed he had been discharged because of his race. (A-117). O&M takes such allegations very seriously and immediately conducted an investigation into Plaintiff's allegations. The investigation did not substantiate Plaintiff's claims of discrimination or retaliation and was closed in late October 2010. (A-118; A-168).

## **STANDARD OF REVIEW**

A district court's grant of summary judgment is reviewed *de novo*. *Cellular Telephone Co. v. Town of Oyster Bay*, 166 F.3d 490, 492 (2d Cir. 1999). This Court "utilizes the same standard as the district court: summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law." *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998). A material fact is one that would "affect the outcome of the suit under the governing law," and a dispute about a genuine issue of material fact occurs if the evidence is such that "a reasonable [factfinder] could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 57 (2d Cir. 1997). In determining whether there is a genuine issue of material fact, the court must resolve all ambiguities, and draw all inferences, against the moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam); *see also Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir. 1987).

To defeat a motion for summary judgment, the non-moving party must do "more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the non-moving party must set forth "specific facts showing that

there is a genuine issue for trial." *Id.* (quoting Fed. R. Civ. P. 56(e)); *W. World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990). Importantly, the non-moving party cannot defeat summary judgment with evidence consisting of mere conclusory allegations, speculation, or conjecture. *W. World*, 922 F.2d at 121. Although the non-moving party need not produce evidence in admissible form for trial to avoid summary judgment, the non-moving party cannot rest on the pleadings, but must set forth specific facts in the affidavits, depositions, answers to interrogatories, or admissions on file showing there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

## SUMMARY OF ARGUMENT

Plaintiff was terminated from his employment as a Senior Analyst with O&M after several unprofessional altercations with an important customer led the customer to demand his removal from assignment to that customer's facility. The evidence supporting Defendant's legitimate basis for terminating Plaintiff's employment is overwhelming and includes the sworn statement of the customer representative that demanded Plaintiff's removal and contemporaneous documentation. Against the powerful weight of that evidence, Plaintiff's contention that his termination was the result of discrimination based on his race in violation of Title VII is supported only by Plaintiff's own speculation and surmise. Plaintiff has presented no actual evidence to support his conclusory allegations.

Given the absence of evidence to support his case, Plaintiff has resorted to a single novel, but ultimately unavailing argument on appeal. Namely, that the unbiased employees who made the decision to terminate his employment were influenced by a co-worker with discriminatory animus. In his Brief, Plaintiff concedes that there is no actual evidence that the decision makers considered his race or national origin in deciding to terminate his employment. (Plaintiff's Brief at pp. 1, 16-17). In fact, Plaintiff goes as far as to call the individuals that terminated his employment the "nondiscriminating decsionmakers," and admits that their judgment was "autonomous." (Plaintiff's Brief at p. 1). However, he suggests that his colleague, Mark Davis, "harbor[ed] discriminatory animus towards the Appellant on account of his race and national original," and somehow "played a meaningful role in the decision to terminate Appellant." (Plaintiff's Brief at pp. 19, 22). Plaintiff's argument was properly rejected by the court below because Plaintiff was unable to present any actual evidence that his race or national origin factored into any decision related to his employment by O&M. Thus, there is no colorable basis for concluding that anyone at O&M harbored an illegal motive, which is fatal to Plaintiff's discrimination claims.

Moreover, as the district court explained, even *assuming* that the alleged statements made by Mr. Davis were somehow racially biased or racially insensitive, there was absolutely no evidence "that Davis was involved in the

11

decision to terminate Plaintiff" or that Davis "had 'considerable influence' over the decision makers who terminated his employment." (A-291). The district court went on to conclude that O&M "articulated a legitimate, nondiscriminatory reason for its decision to terminate Plaintiff – the request of a customer after 'continuing inappropriate behavior.'" (A-294 – A-295). Finally, the district court found that Plaintiff presented no evidence of pretext, where he presented no evidence that the customer's request for his removal from the account was motivated by discriminatory animus or was not the actual reason for O&M's decision. (A-297 – A-298).[2]

Accordingly, as evidenced by the record below, and affirmed by the district court, Plaintiff failed to carry his burden to defeat Defendant's Motion for Summary Judgment as there exists no genuine issue of material fact to preclude

---

[2] The only remaining claims in the instant action are Plaintiff's Title VII discrimination claims based on his race. He has withdrawn his national origin discrimination claim. (A-244; A-287). Further, Plaintiff has abandoned his retaliation claims, as well as his NYSHRL and NYCHRL claims. *See State St. Bank & Trust Co. v. Inversions Errazuriz Limitada*, 374 F.3d 158, 172 (2d Cir. 2004) ("When a party fails adequately to present arguments in an appellant's brief, [this Court] consider[s] those arguments abandoned."); *Tolbert v. Queens College*, 242 F.3d 58, 75 (2d Cir. 2001) ("It is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."); *Lederman v. N.Y. City Dep't of Parks & Rec.*, 731 F.3d 199, 203 (2d Cir. 2013) ("To preserve arguments for appellate review, appellants must include in their briefs their 'contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies.'")(*citing* Fed. R. App. P. 28(a)(9)(A)).

summary judgment for Defendant. For the foregoing reasons and as detailed below, the district court's decision should be affirmed and judgment entered in Defendant's favor.

## ARGUMENT

### SUMMARY JUDGMENT WAS PROPERLY GRANTED TO DEFENDANT WHERE PLAINTIFF CANNOT SHOW THAT HE WAS TERMINATED UNDER CIRCUMSTANCES GIVING RISE TO AN INFERENCE OF DISCRIMINATION

As the district court properly determined, Plaintiff cannot establish that his termination occurred under circumstances raising an inference of racial or national origin discrimination and, thus, he has failed to make out even a *prima facie* case of discrimination. (A-290); *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). It is Plaintiff's burden to prove that his race was a "motivating factor" in his termination, but Plaintiff has not presented any evidence of comments or conduct from which a reasonable person could discern a discriminatory motive for his treatment. *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203 (1995). Plaintiff has failed, both on appeal and in the case below, to show that there is any rational basis to believe that Mr. White or Ms. Hamilton, who ultimately made the decision to terminate his employment, treated him differently from any others because he is Black. Moreover, and contrary to Plaintiff's assertion, the district court explicitly found that there was absolutely no evidence "that Davis was involved in the decision to terminate Plaintiff" or that Davis "had 'considerable influence' over the

13

decision makers who terminated his employment." (A-291). On appeal, Plaintiff points to no evidence to refute this determination, nor does he point to any evidence to suggest that O&M's reason for terminating him was pretextual. Rather, Plaintiff relies on conclusory, vague statements and allegations, which are insufficient to satisfy the burden of proof required to establish an actionable claim for unlawful discrimination. *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir. 1985) ("To allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all Title VII cases.").

### A. Mr. Davis Had No Influence Over the "Nondiscriminating Decisionmakers"

Plaintiff's sole argument on appeal is that Plaintiff's co-worker, Mr. Davis, was motivated by racial animus when he reported Plaintiff's inappropriate behavior in the August 30, 2010 meeting (with a very important client) to management, which somehow influenced the decision makers, Mr. White and Ms. Hamilton. (Plaintiff's Brief at pp. 19-20). Not only does Plaintiff skim over the fact that he has no evidence of Mr. Davis' racial animus, but he disregards the Court's determination below noting that he had failed to produce evidence that Mr.

14

Davis influenced the decision makers – individuals who he himself calls the "non-discriminating decisionmakers."[3]

While Plaintiff makes the entirely conclusory assertion on appeal that "the record is filled of evidence showing that Mark Davis played a meaningful role in the decision to terminate the Appellant," he fails to actually identify any such evidence, and further, no such evidence exists. (Plaintiff's Brief at p. 22). Under the law, however, Plaintiff's unsupported assertions are insufficient to salvage his claims. *See Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996); *Robinson v. Zurich N.A. Ins. Co.*, 892 F. Supp. 2d 409, 437 (E.D.N.Y. 2012); *Del Franco v. N.Y. City Off-Track Betting Corp.*, 429 F. Supp. 2d 529, 534 (E.D.N.Y. 2006) (Mere conclusory statements, conjecture, or speculation cannot by themselves create a genuine issue of material fact sufficient to avoid summary judgment.).

By contrast, the record is replete with evidence demonstrating that Mr. Davis did *not* supervise Plaintiff and had *nothing* to do with the eventual decision to terminate his employment. (A-126; A-193; A-195). Moreover, the factors that actually influenced the decision makers are clear from the record. *Id.* Plaintiff was terminated after Mr. Manashir, the primary representative of a very important

---

[3] Critically, Plaintiff's own account of the August 30, 2010 meeting is factually consistent with Mr. Davis' account of the meeting. Neither, of course, reported any conduct that could conceivably be construed as demonstrating that Mr. Davis harbored racial animus.

customer to O&M, left Mr. White a voicemail saying things were not working out between him and Mr. Joseph and that he was troubled by the support provided to him by the O&M Account Manager. (A-111 – A-112; A-174 – A-175; A-181). Given the importance of the relationship with NYM, Plaintiff was removed from the account. (A-174 – A-175). Having no other position available for him and based on his observed behavior, Mr. White and Ms. Hamilton recommended termination of Plaintiff's employment with the company. (A-117; A-176).

In fact, Ms. Hamilton testified that until the client demanded his removal from the account, "there had been no plan to terminate Mr. Joseph's employment." (A-117). Of course, complaints from customers about an employee's performance are well-accepted, non-discriminatory reasons for terminating an employee, especially one in a customer-facing role such as Plaintiff. *See, e.g., Brower v. Continental Airlines, Inc.*, 62 F. Supp. 2d 896, 906 (E.D.N.Y. 1999) (finding that numerous customer complaints constituted a legitimate, nondiscriminatory reason for terminating an employee and noting "[c]ourts have held, and common sense dictates, that an employee with poor interpersonal skills and behavior problems may not be qualified for a job that requires constant contact with an employer's customers"); *Holt v. KMI-Continental, Inc.*, 95 F.3d 123, 130 (2d. Cir. 1996) (holding that numerous complaints from clients was a legitimate reason for firing an employee). *See also, Lawless v. TWC Media Solutions, Inc.*, No. 11 Civ. 2076,

16

2012 WL 2579897, at *1 (2d Cir. July 5, 2012) (poor performance is a legitimate, non-discriminatory reason for employee's termination that was not pretextual). The decision to terminate Plaintiff's employment was made against the backdrop of customer complaints and had nothing to do with his race or national origin, nor did those complaints have anything to do with Mr. Davis or Mr. Davis' account of Plaintiff's indiscretions. (A-195).

Plaintiff's reliance on *Rose v. NYC Board of Educ.*, 257 F.3d 156 (2d Cir. 2001) to support his argument that Mr. Davis, Plaintiff's coworker, somehow had influence over the "nondiscriminating decisionmakers" is also unpersuasive. (Plaintiff's Brief at pp. 16-17). Unlike the situation here, the alleged discriminator in *Rose*, the superintendent of the plaintiff's school district, was most certainly the plaintiff's direct supervisor (*id.* at p.158) and he made a formal recommendation to the Board of Education that the plaintiff's non-tenure service be discontinued. *Id.* The "Board followed that recommendation." *Id.[4]* Further, the court found that the

---

[4] Plaintiff's notation that Mr. Davis' memorandum pertaining to his incident with Plaintiff contained a section titled "Recommendations" is misleading and of no relevance here. (Plaintiff's Brief at p. 20). Unlike the formal recommendation by the superintendent (the plaintiff's supervisor) to the Board of Education calling for the plaintiff's removal in *Rose*, Mr. Davis was not Plaintiff's supervisor. Nor did Mr. Davis' "recommendation" call for Plaintiff's termination. There also is no evidence that Mr. Davis' "recommendations" had any influence whatsoever in the decision to terminate Plaintiff. As Ms. Hamilton testified, "[u]ntil Mr. Manashir made the demand [for his removal] there had been no plan to terminate Mr. Joseph's employment." (A-117).

inappropriate remarks made by the supervisor-superintendent were "not the stray remarks of a colleague but rather were comments made . . . by her immediate supervisor who had enormous influence in the decision making process." *Id.* at 162. In fact, all of the cases cited by Plaintiff involve reports of misconduct made by a supervisor directly involved in a termination decision even if they were not necessarily the ultimate decision maker. Accordingly, they are totally inapposite here. *See e.g., Griffin v. Washington Convention Ctr.*, 142 F.3d 1308, 1310 (D.C. Cir. 1998) (discriminatory comments made by plaintiff's immediate supervisor who was involved in "every stage of the process that led to her termination" and was the "chief source of information regarding [plaintiff's] job performance"); *Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46 (1st Cir. 2000) (plaintiff's direct supervisor held daily conference calls with decision maker, who called the direct supervisor for his opinion regarding the plaintiff's dismissal); *Abramson v. William Paterson College of New Jersey*, 260 F.3d 265, 286 (3d Cir. 2001) (decision maker sought out information from supervisors to decide whether to retain plaintiff); *Russell v. McKinney Hospital Venture*, 235 F.3d 219, 228 (5th Cir. 2000) (defendant "wielded sufficiently great 'informal' power within [company] such that he effectively became the decision maker with respect to [Plaintiff's] termination"); *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 355 (6th Cir. 1998) (issue of fact as to whether vice president of entire

18

division, who "was in a position to shape the attitudes, policies, and decisions of the [plaintiff's] managers," was involved in employment decision); *Stacks v. Southwestern Bell Yellow Pages, Inc.,* 27 F.3d 1316, 1323 (8th Cir. 1994) (direct supervisor "was closely involved in the decision-making process at each step"); *Weber v. Parfums Givenchy, Inc.,* 49 F. Supp. 2d 343, 361 (S.D.N.Y. 1999) (summary judgment denied where plaintiff's business manager made discriminatory comments and a jury could conclude she had "substantial input in the decision-making process"); *Hunt v. Tektronix, Inc.*, 952 F. Supp. 998, 1006-07 (W.D.N.Y. 1997) (issue of fact as to whether National and Eastern Regional sales managers' comments regarding age established a "pervasive corporate hiring policy"); *see also Maarouf v. Walker Mfg. Co.,* 210 F.3d 750, 754 (7th Cir. 2000) (although supervisor made discriminatory comments, plaintiff could not demonstrate pretext where other supervisors noted similar problems).

Here, by contrast, the district court found that there was no evidence that Mr. Davis was involved in the decision to terminate Plaintiff. (A-291). Plaintiff's contention that "the lower court failed to scrutinize the defendant's affidavits for circumstantial evidence of the non-decisionmaker's role in Appellant's termination" is also demonstrably untrue. (Plaintiff's Brief at p. 19). In fact, the district court specifically explained, "Plaintiff has not alleged that any of the decision makers who terminated him harbored any racial or national origin bias.

19

Nor has Plaintiff presented any evidence that Davis had 'considerable influence' over the decision makers who terminated his employment." (A-291). Regardless of whether or not Mr. Davis ever made comments that could be construed as racially insensitive (which he did not), he had absolutely nothing to do with Plaintiff's termination. Accordingly, his alleged racial bias cannot be attributed to Mr. White or Ms. Hamilton, the "nondiscriminating decisionmakers."[5] *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206 (2d. Cir. 2004); *Risco v. McHugh*, 868 F. Supp. 2d 75 (S.D.N.Y. 2012); *Adeniji v. Admin. for Children Servs., NYC*, 43 F. Supp. 2d 407, 413 (S.D.N.Y. 1999) (isolated comment by non-decisonmaker concerning race was insufficient to establish discrimination).

---

[5] Because the district court found that Mr. Davis had no influence over the decision makers, it did not have to decide whether Mr. Davis ever really made the statements Plaintiff alleges he made, or whether a rational person would even consider the alleged statements to be racially motivated. However, Mr. Davis denies having made any such statements or ever discussing Plaintiff's race. Further, the statements, even as alleged, do not reasonably suggest any discriminatory motives or beliefs. Plaintiff appears to be basing his offensive and very serious conclusion that Mr. Davis "is a racist" wholly on his contention that Mr. Davis' stated concern for Plaintiff after the Haitian earthquake, and allegedly told Plaintiff that he had "accomplished a lot." (Plaintiff's Brief at pp. 4-5). Other than these innocuous statements, Plaintiff offers absolutely nothing else to support his insulting conclusion that Mr. Davis was motivated by racial animus. (Plaintiff's brief, generally). The lack of evidence to support Plaintiff's claim that Mr. Davis is "a racist" on its own could be fatal to Plaintiff's entire argument, as without any evidence of racial animus, Plaintiff's entire theory fails.

**B.    Plaintiff Cannot Show That O&M's Reason for Terminating Him Is Pretextual**

On appeal, Plaintiff has presented absolutely no evidence that O&M's well-documented and undisputed reason for terminating him was pretextual and that the true reason for his discharge was his race or national origin.  After determining that the customer's request to have Plaintiff removed was a legitimate, nondiscriminatory reason to terminate Plaintiff (A-294), the district court also found that Plaintiff failed to show that this reason was pretextual.  Specifically, the Court concluded that Plaintiff had not presented any evidence that a prohibited factor was even *one* of the motivating factors behind his termination.  (A-297); *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510-511 (1993).  Thus, for the same reason the lower court held that Plaintiff failed to meet the lesser *prima facie* standard, it also held that Plaintiff could not carry the higher "pretext" burden.

When specifically asked, Plaintiff was unable to articulate any basis for concluding that O&M's reason for terminating him was pretextual.  (A-91 – A92).  Rather, he relies on only generalized allegations and accusations that the reason for his termination was racially motivated, without any evidence to support his conjecture.  *See Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 19 (2d Cir. 1995) (speculative assertions on matters as to which Plaintiff has no knowledge or evidence are insufficient to defeat summary judgment); *McDonald v. Maimonides Med. Ctr.*, No. 99 Civ. 6849, 2002 WL 257818, at *5 (E.D.N.Y. Jan.

21

3, 2002) (granting summary judgment to employer where plaintiff's "claim that she suffered race or age discrimination is mere speculation"). However that type of implausible surmise and conjecture is insufficient to defeat imposition of summary judgment here.[6]

Plaintiff has not presented any evidence that O&M's stated rationale was pretextual and that he was really terminated for something Mr. Davis said. The overwhelming weight of the evidence establishes that Plaintiff had performance deficiencies, especially when it came to his customer-relations skills, and that he was the subject of a serious complaint from the key customer to which he had been assigned. Plaintiff's disagreement with the termination decision, while typical of employees who are discharged involuntarily, cannot alone support his claim that the decision was based on an improper motive. *Rosenberg v. Chesapeake Pharm. & Health Care Packaging*, 888 F. Supp. 2d 302, 309 (E.D.N.Y. 2012) ("Federal courts do not have a roving commission to review business judgments, and [therefore] may not sit as super personnel departments, assessing the merits—or even the rationality—of employers' nondiscriminatory business decisions") (internal citations and quotations omitted); *Cerwinski v. Ins. Servs. Office, Inc.*, No.

---

[6] Just as there no evidence that Mr. White and Ms. Hamilton's decision was motivated by discriminatory animus, there is also no evidence to suggest that Mr. Manashir's reasons for complaining about his inappropriate conduct was motivated by discriminatory animus (and Plaintiff has abandoned this argument on appeal). (A-297 – A-298).

96-cv-9368, 1997 WL 234672, at *2 (2d Cir. May 8, 1997) (affirming summary judgment for the employer where there was no evidence that employer did not believe that plaintiff had engaged in the improprieties which led to her termination) (internal citations omitted). To withstand summary judgment, Plaintiff "must show more than error; he must show discriminatory animus." *Octobre v. Radio Shack Corp.*, No. 07-cv-3311, 2010 WL 850189, at *9 (S.D.N.Y. Mar. 11, 2010); *Iverson v. Verizon Comms.*, No. 08-cv-8873, 2009 WL 3334796, at *5 (S.D.N.Y. Oct. 13, 2009) ("Merely disagreeing with a supervisor's assessment of work performance, however, is insufficient to raise a triable issue of fact regarding pretext."); *Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 715 (2d Cir. 1994) (noting that an employee's disagreement with an employer's negative evaluations of his performance is not sufficient to establish pretext or support a discrimination claim).

Even if Mr. Davis made the statements alleged by Plaintiff, and they somehow could reasonably be considered suggestive of racial animus by Mr. Davis, Plaintiff still could not establish pretext here since it is undisputed that Mr. Davis was not involved in the decision to terminate him and did not have any supervisory authority over Plaintiff during any time. (A-193; A-195). His argument, that somehow Mr. Davis' reports regarding Plaintiff's inappropriate conduct constituted "influence" is belied by the record, which is devoid of

23

evidence suggesting that Mr. White and Ms. Hamilton terminated Plaintiff because of Mr. Davis' reports.  Rather, the sworn testimony shows that O&M terminated Plaintiff after the Company's key customer demanded that Plaintiff be removed, and Plaintiff has not presented any evidence to show that this stated reason was pretextual.

## **CONCLUSION**

The district court properly granted summary judgment for O&M on Plaintiff-Appellant Hancy Joseph's discrimination and retaliation claims.  Accordingly, for the foregoing reasons, Defendant-Appellee Owens & Minor Distribution, Inc. respectfully requests that the Court affirm the district court's decision granting its motion for summary judgment and dismissing the Complaint in its entirety.

Dated:  October 23, 2014
        New York, New York

MORGAN, LEWIS & BOCKIUS LLP

By:/s/ Ashley Hale_____
Ira G. Rosenstein, Esq.
Ashley Hale, Esq.
101 Park Avenue
New York, New York 10178
(212) 309-6000

Attorneys for Defendant-Appellee

24

CERTIFICATE OF COMPLIANCE WITH
TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS,
AND TYPE STYLE REQUIREMENTS

1. This brief complies with the type-volume limitation of FED R. APP. P. 32(a)(7)(B) because this brief contains 5,656 words, excluding the parts of the brief exempted by FED R. APP. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2007 in Times New Roman 14-point font.

Dated: October 23, 2014
            New York, New York

                        MORGAN, LEWIS & BOCKIUS LLP

                        By: /s/  Ashley Hale_____
                        Ira G. Rosenstein, Esq.
                        Ashley Hale
                        101 Park Avenue
                        New York, New York  10178
                        (212) 309-6000

                        Attorneys for Defendant-Appellee